JACOBUS, J.
 

 The Appellants all own parcels of real property in Summer Haven, a subdivision located on a barrier island just south of the Matanzas Inlet. The only vehicle access to Summer Haven is by a county-owned road known as Old A1A. The underlying complaint centered around allegations that the Appellee, St. Johns County, failed to adequately maintain Old A1A. In this appeal, the Appellant property owners challenge the final summary judgments entered in
 
 *837
 
 favor of the Appellee County. For reasons we will explain, we affirm in part and reverse in part.
 

 By way of background, in 1960 the State of Florida rerouted State Highway A1A approximately 800 feet to the west of its original location. The original shorefront roadway naturally became known as Old A1A. The state deeded the road to St. Johns County in 1979, together with the accompanying right-of-way. The 1.6-mile stretch of road was bordered on the east by the Atlantic Ocean and on the west by the Intracoastal Waterway. When the County took title to Old A1A, there were already a few beachfront homes and several platted lots abutting the road. The parcels ran from Block 3 in the north to Block 65 in the south. The County issued a number of building permits over the years, and several additional beachfront homes were built. Old A1A stood between the beachfront lots and the ocean, and it served as the only means of vehicular access to those parcels of property, which together came to be known as the Summer Haven subdivision.
 

 Old A1A is subject to repeated damage from natural forces such as storms and erosion, which makes the road difficult to maintain. A group of Summer Haven property owners filed suit against the County, seeking relief for what they viewed as the County’s intentional failure to maintain the road in useable condition. Count I of the fourth amended complaint was for declaratory relief and sought a determination of whether the County had a duty to maintain the road. Count II requested a permanent injunction compelling the County to maintain the road at a certain level. Count III claimed inverse condemnation for the diminished access to Summer Haven. Counts IV and V, respectively, contained claims for declaratory relief and inverse condemnation based on a county ordinance that placed a temporary moratorium on the issuance of residential building permits for Summer Haven.
 

 The County filed a counterclaim seeking a declaration that the County had the sole authority and discretion to determine what constituted reasonable road maintenance. In addition, the County filed a third-party complaint to ensure that all Summer Haven property owners were joined in the suit with the original group of plaintiff-owners. The third-party complaint contained five counts for declaratory relief, which roughly corresponded to the five counts of the fourth amended complaint.
 

 Ultimately, the trial court entered final summary judgment in the County’s favor on all of the counts in all three pleadings. The Appellant property owners collectively challenge those three judgments in this consolidated appeal. We conclude that summary judgment was improvidently entered on Counts I and III of the fourth amended complaint.
 

 We reverse the summary judgments on Counts I and III of the fourth amended complaint because we believe the trial court’s decision went too far. With regard to Count I, the trial court effectively held that the County had no duty to repair or restore Old A1A, except in its absolute discretion. This is basically the County’s position on appeal. The Appellants, on the other hand, argue that the County has a duty to repair and maintain its roads in “good order,” and that it has failed to do so.
 

 To resolve the matter, we turn to the reasoning of our sister court in an analogous case. In
 
 Ecological Development, Inc. v. Walton County,
 
 558 So.2d 1069 (Fla. 1st DCA 1990), a corporation sought damages, declaratory and injunctive relief, and a writ of mandamus, based on allegations that the county refused to maintain the public roads leading to certain subdivi
 
 *838
 
 sions. Indeed, the county voted to terminate maintenance of the roads but did not formally abandon them. The county believed that considerable maintenance problems caused by improper construction justified its decision to refuse further repairs to the roads. The First District Court held that the county had no authority, after accepting designation of a public road, to disclaim responsibility for maintenance of that road except by following the formal statutory abandonment procedures. The court noted that “ ‘Boards of County Commissioners are given plenary power and authority over the location, building, repairing, and keeping in order the public roads in their respective counties,
 
 and it is made one of their continuous duties so to locate, build, repair, and keep said roads in good order.’
 
 ”
 
 Id.
 
 at 1071 (quoting with emphasis
 
 State ex rel. White v. MacGibbon,
 
 79 Fla. 132, 84 So. 91, 91 (1920)). The court concluded:
 

 [A] county is not obligated, nor can it be compelled, to perform or provide for any particular construction or maintenance, except such as it voluntarily assumes to do. This is far removed, however, from the notion advanced by appellee [county] that it can accept established roadways within the county, undertake to maintain the same, and later by resolution or other official action (short of abandonment) relieve itself of all duties with respect to maintenance of such roads.
 

 Id.
 

 The court in
 
 Ecological Development
 
 held that the corporation was entitled to a narrow declaration that the county had no authority to place a public road on a “no maintenance” status while still retaining the county right-of-way for control and use as a public road. The relief granted did “not encompass any declaration by the court with respect to the county’s exercise of its discretion regarding the frequency, quality or extent of maintenance for the roads in question.”
 
 Id.
 
 at 1072. The court also found “no basis for relief by way of injunction or writ of mandamus to compel the county to immediately resume maintenance work, or to restore the roads to their prior condition.”
 
 Id.
 
 The court declined to decide whether the corporation might be entitled to further relief under different pleadings and evidence.
 

 The present case is distinguishable from
 
 Ecological Development
 
 in two important respects. Most importantly, the posture of the appeal is different. The judgment appealed there was entered following a bench trial, while this appeal proceeded from a summary judgment. In addition, the county there formally voted to terminate road maintenance, while the County here did not. Still, both are cases in which a county allegedly ceased maintaining a public road without following the statutory procedures for abandoning it. We highlight the distinctions to clarify the scope of our decision.
 

 We hold that the County has a duty to reasonably maintain Old A1A as long as it is a public road dedicated to the public use. We do not hold that the County has the duty to maintain the road in a particular manner or at a particular level of accessibility. However, the County’s discretion is not absolute. The County must provide a reasonable level of maintenance that affords meaningful access, unless or until the County formally abandons the road.
 
 [1]
 
 The summary judgment was premature because disputed issues of material fact remain regarding the level of
 
 *839
 
 road maintenance the County has provided and the level of maintenance it should have provided.
 

 The entry of summary judgment on Count III of the fourth amended complaint was also improper. Count III contained a claim for inverse condemnation based on the diminished access to Summer Haven. “Inverse condemnation is a cause of action by a property owner to recover the value of property that has been de facto taken by an agency having the power of eminent domain where no formal exercise of that power has been undertaken.”
 
 Osceola County v. Best Diversified, Inc.,
 
 936 So.2d 55, 59-60 (Fla. 5th DCA 2006). As the supreme court explained:
 

 There is a right to be compensated through inverse condemnation when governmental action causes a substantial loss of access to one’s property even though there is no physical appropriation of the property itself. It is not necessary that there be a complete loss of access to the property. However, the fact that a portion or even all of one’s access to an abutting road is destroyed does not constitute a taking unless, when considered in light of the remaining access to the property, it can be said that the property owner’s right of access was substantially diminished. The loss of the most convenient access is not compensable where other suitable access continues to exist.
 

 Palm Beach County v. Tessler,
 
 538 So.2d 846, 849 (Fla.1989).
 

 In this case, the Appellants argue that the County has so failed in its duty to reasonably maintain and repair Old A1A that it has effectively abandoned it, thereby depriving them of access to their property without compensation. This is a cognizable claim. We conclude that governmental inaction — in the face of an affirmative duty to act — can support a claim for inverse condemnation. Disputed issues of material fact regarding the cause and degree of the diminished access preclude summary judgment. For example, it is undisputed that natural forces have played a role in the degradation of the road and that the County has performed some level of maintenance — however, whether the level of maintenance provided has been reasonable or whether it has been so deficient as to constitute a de facto abandonment of the road remain hotly contested issues. Disputed factual issues such as these should be left to the finder of fact.
 

 In sum, we conclude that a governmental entity has a duty to reasonably maintain its public roads. Material issues of disputed fact remain in this case regarding whether the County has fulfilled that duty or abandoned it. We therefore reverse the summary judgment entered on Counts I and III of the fourth amended complaint. As a result, the summary judgment entered on the corresponding counts, Counts II and V, of the third-party complaint is also reversed, as is the summary judgment entered on the counterclaim. These reversals do not extend to the portions of the aforementioned counts, and judgments thereon, relating the County’s duty to provide emergency services or access for emergency vehicles — no issue challenging that aspect of the summary judgments is before this court on appeal. We affirm the summary judgments entered on all of the other counts without further comment. We remand for further proceedings consistent with this opinion.
 

 AFFIRMED in part; REVERSED in part; and REMANDED.
 

 EVANDER, J„ and SCHWARTZ, A., Senior Judge, concur.
 

 [1]
 

 . We are mindful that Count I of the fourth amended complaint can be read as requesting far more expansive relief. We nevertheless conclude the claim is sufficient to survive summary judgment, even if the Plaintiffs ultimately may not be entitled to the full relief requested.